```
           IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF TEXAS
                      DALLAS DIVISION
```

EXECUTIVE RISK INDEMNITY, INC., §
et al.,                         §
                                §
              Plaintiffs,       §
                                § Civil Action No. 3:05-CV-0051-D
VS.                             §
                                §
FIRST STATE BANK, N.A., et al., §
                                §
              Defendants.       §

## MEMORANDUM OPINION AND ORDER

This is an insurance coverage declaratory judgment action by plaintiffs Executive Risk Indemnity, Inc. ("Executive Risk") and Federal Insurance Company ("Federal") against defendants First State Bank, N.A. ("FSB"), State National Bank of West Texas, N.A. ("SNB"), Tom C. Darden, Jay Kemper, and Ron Walton.[1]  Executive Risk and Federal seek a declaratory judgment that there is no coverage under two insurance policies issued to State National Bancshares, Inc., its subsidiaries, and the subsidiaries' directors and officers.  They both move for summary judgment, which only SNB

---

[1] Plaintiffs dismissed their actions against two original defendants, Monte Scarbrough and C. D. Morse d/b/a 38th & Q Auto.

opposes.[2]   For the reasons that follow,[3] the court grants the motion.

I

Executive Risk's policy covered the period September 30, 2000 through September 30, 2001.  Federal's policies covered the periods September 30, 2001 through September 30, 2002 and September 30, 2002 through September 30, 2003.  Executive Risk and Federal move for summary judgment, contending, *inter alia*, that there is no coverage because the underlying claim was not first made during any of the policy periods covered by Federal's insurance, and because defendants failed to provide timely notice of the underlying claim (which was made via a third-party petition in a county-court lawsuit).[4]  The parties have previously stipulated to the facts on

---

[2]SNB states in its opposition brief that it "does not agree that it is seeking coverage for any entity other than [SNB]."  D. Br. 3.  The court understands this statement, considered in the context of all the arguments contained in SNB's brief, to mean that SNB contends it alone is entitled to insurance coverage and that only SNB opposes plaintiffs' summary judgment motion.

[3]Under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, this is a "written opinion[ ] issued by the court" because it "sets forth a reasoned explanation for [the] court's decision."  It has been written, however, primarily for the parties, to decide issues presented in this case, and not for publication in an official reporter, and should be understood accordingly.

[4]SNB appears to concede in its response brief that it does not contend that it is covered under the Federal policy.  *See* P. Br. 3 ("[SNB] does not believe it has ever made a claim on [Federal] for coverage.").

which Executive Risk and Federal rely to obtain summary judgment. The court also relies on evidence that SNB has introduced in opposition to plaintiffs' motion.[5]

II

Federal has demonstrated beyond peradventure[6] that the insurance policy at issue is a claims-made policy and that no claim was first made against a defendant within the 2001-02 or 2002-03 policy period. Under the Federal policy, a claim is made on the date the judicial or administrative proceeding is served on the insured. The parties have stipulated that SNB was served with the third-party petition in January 2001, before the September 30, 2001

---

[5]In their reply brief, Executive Risk and Federal object to some of SNB's summary judgment evidence. The court need not address the objections because plaintiffs have met their summary judgment burden regardless whether the evidence is considered.

[6]Executive Risk and Federal include in their motion a discussion of the summary judgment standard that suggests they contend their burden is limited to pointing the court to the absence of evidence to support defendants' claim to insurance coverage, in response to which defendants must set forth specific facts showing there is a genuine issue of material fact for trial. *See* Ps. Br. 9. This is the burden, however, that applies when a summary judgment movant will not have the burden of proof on a claim or defense at trial. In this declaratory judgment action, Executive Risk and Federal have not demonstrated that defendants will have the burden of proof at trial as to the issues on which plaintiffs seek summary judgment. Accordingly, the court will assume that, to obtain summary judgment, Executive Risk and Federal "must establish 'beyond peradventure all of the essential elements of the claim. . . .'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).

inception of the policy.  Accordingly, assuming *arguendo* that SNB even maintains that it is covered under the Federal policy, *see supra* note 4, Federal is entitled to summary judgment declaring that there is no insurance coverage under the Federal policy.

### III

Executive Risk has demonstrated beyond peradventure that defendants did not give notice of the claim as soon as practicable. As this court explained in *Federal Insurance Co. v. CompUSA, Inc.*, 239 F.Supp.2d 612 (N.D. Tex. 2002), *aff'd*, 319 F.3d 746 (5th Cir. 2003) (per curiam), "When the relevant facts are undisputed, the question whether notice was given 'as soon as practicable' or 'within a reasonable time' is a question of law for the court." *Id.* at 615.  In *Federal Insurance* the court held that there is ample authority in Texas that taking 11 months to notify an insurer is not notice "as soon as practicable." *Id.*  In the present case, the undisputed summary judgment evidence shows that Executive Risk was not notified until 28 months after the underlying claim was first made against defendants.

In its response brief, SNB appears to argue that there is a fact issue regarding whether reasonable notice was given.[7]  It

---

[7]SNB's brief is confusing concerning whether it opposes summary judgment on the basis that Executive Risk was not prejudiced by the timing of the notice.  At one point SNB mentions as a "question of fact" whether Executive Risk was prejudiced. *See* D. Br. 3.  Later, on the same page of its brief, it states "that prejudice is not the question at this point; proper notice is the question of fact to be decided." *Id.*  To the extent SNB intends to

maintains that the summary judgment evidence shows that the parties established USI Insurance Company ("USI"), an insurance agent, as a go-between contact.  According to SNB's evidence, after it received the third-party petition at the end of January or the beginning of February 2001, it sent the petition to USI, SNB's agent for all liability policies.  D. App. 8.  SNB posits that, under Texas law, notice given to the insurance agent is imputed to the agent's insurer, and the agent's knowledge obtained while acting within the scope of its authority is presumed to have been communicated to the insurer.  SNB asserts that, regardless whether the agent communicated such knowledge to the insurer, the agent's knowledge by law became the insurer's knowledge.

Under Texas law, "[a]n insurance agent can act as an agent of both the insured and insurer."  *Hunt v. State*, 737 S.W.2d 4, 5 n.1

---

argue that Executive Risk was not prejudiced, this contention is irrelevant.  *See Federal Ins.*, 239 F.Supp.2d at 617 (holding that insurer under claims-made policy was not required to demonstrate actual prejudice from absence of notice that policy required).

SNB's discussion of *Ridglea Estate Condominium Ass'n v. Lexington Insurance Co.*, 398 F.3d 332, *opinion withdrawn and superseded by* 415 F.3d 474 (5th Cir. 2005), is also confusing.  SNB cites the withdrawn panel opinion, not the opinion that replaced it.  In the new opinion, the panel pointed out that it had "previously held . . . that an insurer may deny coverage under a 'claims made' liability policy without a showing of prejudice."  *Ridglea Estate Condo. Ass'n*, 415 F.3d at 480 n.4 (citing *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 659 (5th Cir. 1999)).  SNB appears to recognize that the new opinion varies from the superseded one, because it states that "The Court later reversed itself concerning a claims made policy[,]" and it "maintains that prejudice is not the question at this point[.]"  D. Br. 3.  Yet, as noted, SNB cites the withdrawn opinion rather than the one that replaced it.

(Tex. App. 1987, no pet.) (citing *Maintain, Inc. v. Maxson-Mahoney-Turner, Inc.*, 698 S.W.2d 469 (Tex. App. 1985, writ ref'd n.r.e.)). Although "[g]enerally, an insurance agent acts for the insured in making application for insurance and in processing the policy, and acts for the insurer in delivering the policy and in collecting and remitting the premium[,] . . . the question of agency and the extent of authority is one of fact and may be shown by either direct or circumstantial evidence." *Id.* (citations omitted). In the present case, however, there is no question of fact, because the evidence SNB cites shows that USI was SNB's agent, not Executive Risk's. *See* D. App. 8 ("Upon receipt of same, [SNB] sent the petition to [USI], [SNB's] agent for all [SNB] liability policies."). Consequently, the notice SNB gave in January or February 2001 was not notice to Executive Risk; it was notice to its own agent. The May 2003 notice therefore controls, and the court holds as a matter of law that this notice was not given as soon as practicable.[8]

---

[8]SNB relies on evidence that may be intended to show that SNB was ignorant of the proper notice procedure. Its Senior Vice-President avers that his "presumption was that USI would notify all our carriers for the Banks," and that when SNB was sued, he "did not have anything to tell [him] to send the notification to the address in Connecticut." D. App. 8. This proof tends to corroborate that USI was SNB's agent by establishing that SNB presumed that USI would notify all of SNB's insurance carriers, regardless of carrier.
    SNB also cites evidence that USI sent SNB endorsements that were added after the Executive policy came into existence. It contends that it seems that even Executive did not know what USI was sending SNB. Although SNB does not clearly state the purpose

\*   \*   \*

Executive Risk and Federal have demonstrated that they are entitled to summary judgment declaring that there is no coverage under the insurance policies at issue. The court grants their motion for summary judgment and enters declaratory judgment in their favor by judgment filed today.

**SO ORDERED.**

January 9, 2006.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

of citing this evidence, the proof is insufficient to raise a fact issue concerning whether USI was SNB's agent or Executive's.

- 7 -